**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

★  **JUL 3 0 2014**  ★

~~BR~~OOKLYN OFFICE

UNITED STATES OF AMERICA and STATE OF
NEW YORK, EX REL. LUCIE GABRIEL,

Plaintiffs,

-against-

BROOKLYN PLAZA MEDICAL CENTER,

Defendant.

**SETTLEMENT AGREEMENT**

No. 10-cv-4452 (FB)

This Settlement Agreement ("Agreement") is entered into between and among the

United States of America, acting through the United States Department of Justice and on behalf

of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human

Services ("HHS") (collectively the "United States"), Brooklyn Plaza Medical Center ("BPMC"),

and Relator Lucie Gabriel ("Relator") (hereafter collectively referred to as the "Parties"),

through their authorized representatives.

**RECITALS**

A.     BPMC is a not-for-profit and federally qualified health center located in

Fort Greene, Brooklyn.  BPMC's main medical facility is located at 650 Fulton Street, Brooklyn,

New York 11217.  It also operates two satellite facilities:  the Whitman Ingersoll Farragut Health

Center ("WIFHC"), located at 297 Myrtle Avenue, Brooklyn, New York 11205, and the School-

Based Health Center, located at 77 Clinton Avenue, Brooklyn, New York 11205.

B.     BPMC was enrolled as a provider of health services to Medicaid recipients

during all times relevant to this Agreement under Medicaid provider number 00357451.

C.     On or about September 29, 2010, Relator filed a *qui tam* action in the

United States District Court for the Eastern District of New York (the "Court"), captioned *United*

*States of America and State of New York, ex rel. Lucie Gabriel v. Brooklyn Plaza Medical Center*, Docket No. 10-cv-4452 (FB), pursuant to, *inter alia*, the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action").

        D.      The United States contends that BPMC submitted or caused to be submitted claims for payment to the Medicaid Program ("Medicaid"), 42 U.S.C. 1396-1396w-5.

        E.      The United States contends that it has certain civil claims against BPMC for engaging in the following conduct (the "Covered Conduct"):

> During the period January 1, 2001 through January 9, 2013, BPMC knowingly presented, or caused to be presented, false claims to Medicaid, and secured payment thereon, for services rendered at WIFHC. Specifically, BPMC operated the WIFHC facility, and billed Medicaid for services rendered at the WIFHC facility using BPMC's provider number and locator code, without an operating certificate for WIFHC which was required for BPMC to receive Medicaid reimbursement for such services.

        F.      BPMC is contemporaneously entering into a settlement agreement with the State of New York (the "State") to resolve the State's claims arising from the Covered Conduct (the "State Settlement Agreement").

        G.      This Agreement is neither an admission of the allegations or liability by BPMC nor a concession by the United States that its claims are not well founded.

        H.      Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Agreement and to Relator's reasonable expenses, attorneys' fees, and costs.

        I.      The Parties enter into this Agreement to avoid the delay, uncertainty, inconvenience, and expense of protracted litigation over the Covered Conduct, and in consideration of the mutual promises and obligations of this Agreement.

*United States et al. v. Brooklyn Plaza Medical Center*
*Settlement Agreement*
                                                      *Page 2 of 24*

## DEFINITIONS

J.      "Withhold Amount" means the total amount of Medicaid payments withheld pursuant to the 15% withhold imposed by the New York State Department of Health ("DOH") on BPMC's current and future Medicaid payments, beginning on or about December 13, 2012 and ending on or about May 5, 2014, less an amount refunded to BPMC. The total amount is $298,690.44.

K.      "Third Party Payors" includes Medicaid, Medicare, TRICARE, all other federal, state, county or municipal health insurance plans, all managed care plans or organizations, and all providers of any managed care plans or organizations, and all private insurance plans or exchanges.

L.      "Patient Service Revenue (Net)" means all of BPMC's revenues from the billing of any and all Third Party Payors or patients for health care services rendered by BPMC, including bad debt and charity care payments, as reflected on BPMC's Audited Financial Statements for the applicable year. Patient Service Revenue (Net) shall not include any revenues received from other sources, such as grants.

M.      "New Specialty" means any specialty that is not offered by BPMC to its patients as of the Effective Date of this Agreement or reflected in BPMC's projected Financial Statements and Cash Flow analysis for 2013 and 2014 previously provided to the State and the United States. The attached Exhibit 1 contains a list of all specialties currently offered by BPMC to its patients and/or reflected in BPMC's projected Financial Statements and Cash Flow analysis for 2013 and 2014.

N.    "New Site" means any site that is not being operated by BPMC as of the Effective Date of this Agreement and that is not replacing a site that is being operated by BPMC as of the Effective Date of this Agreement.

O.    "New Revenue" means all of BPMC's revenues from the billing of all Third Party Payors and patients for health care services rendered during the first 12 months at a New Site and all of BPMC's revenues from the billing of all Third Party Payors and patients for health care services rendered during the first 12 months in a New Specialty. After such time, any revenues from the billing of Third Party Payors or patients of BPMC for services rendered at the New Site or in the New Specialty shall be included in Adjusted Patient Service Revenue (Net), as defined below.

P.    "Adjusted Patient Service Revenue (Net)" shall be equal to Patient Service Revenue (Net) as stated on the Audited Financial Statement less New Revenue for each applicable year.

Q.    "Net Surplus" means BPMC's net surplus as reflected on BPMC's Audited Financial Statements for the applicable year, less any payment received in that year due to a retroactive rate increase for any year prior to 2014.

R.    "Government" refers collectively to the United States and the State of New York.

S.    Unless otherwise specified, any funds payable by BPMC to the Government pursuant to this Agreement shall be divided between the United States and the State, with the United States receiving 40% and the State receiving 60%.

## TERMS AND CONDITIONS

1.      BPMC shall pay to the United States and the State the following, which is collectively referred to herein as the "Settlement Amount":

    a.  BPMC shall pay the United States and the State $600,000.  Of this amount, the United States shall receive 40%, which is $240,000 (referred to herein as the "Federal Settlement Amount") as follows:

        i.   In the State Settlement Agreement, BPMC consented to the State receiving the entire Withhold Amount and applying it to the settlement amount due.  The State has informed the United States that it will forward to it 40% of the Withhold Amount, consisting of $119,476.18.  BPMC consents to this transfer.

        ii.  BPMC shall pay the remaining amount, consisting of $120,523.82, in quarterly installments in accordance with the schedule attached hereto as Exhibit 2.

    b.  BPMC shall also pay to the United States and the State the greater of the following for fiscal years 2013, 2014, 2015, 2016, and 2017, with 60% of any amount owed under this provision paid to the State and 40% being due to the United States (the "Supplemental Government Settlement Amount"):

        i.   5% of any Adjusted Patient Service Revenue (Net) that exceeds $4,328,171 in 2013, $5,417,423 in 2014, $5,617,326 in 2015, $5,824,605 in 2016, and $6,039,533 in 2017; or

        ii.  50% of any Net Surplus for such year.

The Supplemental Government Settlement Amount shall be due within 60 days of the finalization of the Audited Financial Statement for the applicable fiscal year listed in this subsection, or by April 12th (or the following business day if April 12th falls on a weekend) of the second year following the relevant fiscal year (*e.g.*, the Audited Financial Statement for fiscal year 2013 would be due by April 12, 2015), whichever is earlier.

c.  In addition, in the event that BPMC receives payment for any retroactive rate increase from any Third Party Payor for any year prior to 2014, BPMC shall pay to the United States and the State 100% of the amount of such payment.

d.  Pursuant to this Agreement, BPMC's aggregate payments to the United States and the State shall not exceed $1,748,663.56, plus interest at the rate of 2.250% compounded from the Effective Date (hereinafter, "Interest").

e.  All payments to the United States under this Agreement shall be made by electronic funds transfer pursuant to written instructions provided by the United States Attorney's Office for the Eastern District of New York.

2.     BPMC shall provide to the United States and the State a copy of its Audited Financial Statements for the years contained in Paragraph 1(b).  BPMC shall send the Audited Financial Statements by overnight mail to the addresses set forth in Paragraph 32 and BPMC shall do so within 60 days of the finalization of the Audited Financial Statement for the applicable fiscal year listed in Paragraph 1(b), or by April 12th (or the following business day if

April 12th falls on a weekend) of the second year following the relevant fiscal year, whichever is earlier.

3.      Subject to the exceptions in Paragraph 5 (concerning excluded claims) below, and conditioned upon BPMC's full payment of the Settlement Amount and subject to Paragraph 19 below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the United States releases BPMC, together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former owners, officers, directors, agents, employees, and affiliates; and the successors and assigns of any of them from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; and the common law or equitable theories of overpayment, disgorgement, unjust enrichment, and fraud.

4.      Subject to the exceptions in Paragraph 5 below, and conditioned upon BPMC's full payment of the Settlement Amount, Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, releases BPMC together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former owners, officers, directors, agents, employees, and affiliates; and the successors and assigns of any of them from any civil monetary claim the Relator has on behalf of the United States against BPMC under the False Claims Act, 31 U.S.C. §§ 3729-3733; however, nothing in this Agreement forbids Relator from seeking (a) to recover for her retaliation claim against BPMC, in violation of 31 U.S.C. § 3730(h); and/or (b) to recover her expenses or attorney's fees and costs from BPMC, pursuant to 31 U.S.C. § 3730(d).

*United States et al. v. Brooklyn Plaza Medical Center*                    *Page 7 of 24*
*Settlement Agreement*

5.    Notwithstanding any release given in this Agreement, except as provided in Paragraph 5(b) below, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

      a.  Any civil, criminal, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code);

      b.  Except as explicitly stated in this Agreement, any administrative liability, including any mandatory or permissive exclusion from Federal health care programs;

      c.  Any criminal liability;

      d.  Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct; and

      e.  Any liability based upon obligations created by this Agreement.

6.    Relator and her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement and the Settlement Amount are fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).  In connection with this Agreement and the Civil Action, Relator and her heirs, successors, attorneys, agents, and assigns agree that neither this Agreement, any intervention by the United States in the Civil Action in order to dismiss the Civil Action, nor any dismissal of the Civil Action, shall waive or otherwise affect the ability of the United States to contend that provisions in the False Claims Act, including 31 U.S.C. §§ 3730(d)(3) and 3730(e), bar Relator from sharing in the proceeds of this Agreement.  Moreover, the United States and Relator and her heirs, successors, attorneys, agents, and assigns agree that they each retain all of their rights pursuant to the False Claims Act on the issue of the share percentage, if any, that Relator should

receive of any proceeds of the settlement of her claim(s), and that no agreements concerning any Relator share have been reached to date.

7.    BPMC has provided sworn financial disclosure statements ("Financial Disclosures") to the United States and the United States has relied on the accuracy and completeness of those Financial Disclosures in reaching this Agreement.  BPMC warrants that the Financial Disclosures are complete, accurate, and current as of the date of the Financial Disclosure.  If the United States learns of asset(s) in which BPMC had an interest at the time of the submission of the Financial Disclosure that were not disclosed in the Financial Disclosures, or if the United States learns of any misrepresentation by BPMC on, or in connection with, the Financial Disclosures, and if such nondisclosure or misrepresentation increases the estimated net worth set forth in the Financial Disclosures by $200,000 or more, the United States may at its option:  (a) rescind this Agreement and file suit based on the Covered Conduct, or (b) let the Agreement stand and collect the full Federal Settlement Amount, and any amounts due pursuant to Paragraph 1(b) and (c), plus 100% of the value of the net worth of BPMC previously undisclosed.  BPMC agrees not to contest any collection action undertaken by the United States pursuant to this provision, and will immediately pay the United States all reasonable costs incurred in such an action, including attorney's fees and expenses.

8.    In the event that the United States, pursuant to Paragraph 7 (concerning disclosure of assets), opts to rescind this Agreement, BPMC agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 60 calendar days of written notification to BPMC that this Agreement has been rescinded, and

(b) relate to the Covered Conduct, except to the extent these defenses were available on September 29, 2010.

9.      BPMC further agrees to sign a Consent Judgment in the form attached hereto as Exhibit 3, acknowledging that BPMC: (a) is indebted to the United States in the amount of $699,465.42 (which is 40% of the total Settlement Amount) plus Interest commencing at the Effective Date of this Agreement; (b) has no defense, counterclaim, or offset thereto; and (c) confesses judgment to the United States as a result of its failure to pay a debt owed to the United States.  The United States agrees to hold said Consent Judgment in escrow and not to submit the same to any court to be "so ordered," provided that the payments are made in accordance with the requirements of this Agreement.

10.     In the event of a default by BPMC on its obligations under Paragraph 1, and said default remains uncured for 30 days after notice is sent to BPMC by the United States in the manner provided in Paragraph 11, the United States shall have the right, at its sole option and discretion:  (a) to submit the Consent Judgment to any court to be "so ordered" and to declare due and owing the entire amount of the confessed judgment, in the amount of $699,465.42, plus Interest, until fully and finally paid, and to enforce the same; (b) to rescind this Agreement and reinstate the Complaint; (c) to offset the remaining unpaid balance from any amounts due and owing to BPMC by any department, agency, or agent of the United States at the time of default; and/or (d) to exercise any other rights granted by law, or under the terms of this Agreement, or recognizable at common law or in equity.  BPMC shall not contest the execution and enforcement of the Consent Judgment, any offset imposed, or any collection action undertaken by the United States pursuant to this paragraph, either administratively or in any court.  In addition, BPMC shall pay the United States all reasonable costs of collection and enforcement

under this paragraph, including attorney's fees and expenses. In the event that the United States opts to rescind this Agreement pursuant to this paragraph, BPMC shall not plead, argue or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims which relate to the Covered Conduct, except to the extent those defenses were available on September 29, 2010.

11.     The United States shall give written notice of such default, and of its declaration of the same, by certified mail return receipt requested, to BPMC and to its undersigned counsel. BPMC shall have 30 days from the date of mailing the notice of default in which to cure such default. BPMC shall notify the United States within 30 business days, by certified mail return receipt requested, of any change in its principal place of business, or in the event of any substitution of counsel.

12.     Further, in the event of default, OIG-HHS may exclude BPMC from participating in all Federal health care programs until BPMC pays the Settlement Amount and reasonable costs as set forth in Paragraph 1, above. OIG-HHS will provide written notice of any such exclusion to BPMC. BPMC waives any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agrees not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion BPMC wishes to apply for reinstatement, BPMC must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-3005. BPMC will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

13.     BPMC waives and shall not assert any defenses it may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based

*United States et al. v. Brooklyn Plaza Medical Center*                    *Page 11 of 24*
*Settlement Agreement*

in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

14.     BPMC fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that BPMC has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

15.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (*e.g.*, Medicare Administrative Contractor, fiscal intermediary, carrier) or any State payer, related to the Covered Conduct; and BPMC agrees not to resubmit to any Medicare contractor or any State payer any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims.

16.     BPMC agrees to the following:

    a.     Unallowable Costs Defined:  All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47, and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5, and the regulations and official program directives promulgated

thereunder) incurred by or on behalf of BPMC, its present or former

officers, directors, employees, shareholders, and agents in connection

with:

    i.    the matters covered by this Agreement;

    ii.    the United States' audit(s) and civil and any criminal

        investigation(s) of the matters covered by this Agreement;

    iii.    BPMC's investigation, defense, and corrective actions

        undertaken in response to the United States' audit(s) and civil

        and any criminal investigation(s) in connection with the

        matters covered by this Agreement (including attorney's fees);

    iv.    the negotiation and performance of this Agreement; and

    v.    the payments BPMC makes to the United States pursuant to

        this Agreement and any payments BPMC makes to Relator,

        including costs and attorneys' fees,

are unallowable costs for government contracting purposes and under the Medicare Program,

Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program

("FEHBP") (hereinafter referred to as "Unallowable Costs").

    b.  Future Treatment of Unallowable Costs:  Unallowable Costs shall be

        separately determined and accounted for in non-reimbursable cost centers

        or categories by BPMC, and BPMC shall not charge such Unallowable

        Costs directly or indirectly to any contracts with or grants from the United

        States, any HHS or Health Resources and Services Administration

        (HRSA) program, or any State Medicaid program, or otherwise seek

payment for such Unallowable Costs through any cost reports, cost statements, information statements, appeals, grant applications, or other payment requests submitted by BPMC or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c.  Treatment of Unallowable Costs Previously Submitted for Payment: BPMC further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, Medicaid and FEHBP fiscal agents, and HHS or HRSA agents, any Unallowable Costs (as defined in this paragraph) included in payments previously sought from the United States, State, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, grant applications, appeals, or other payment requests already submitted by BPMC or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, grant applications, appeals, or other payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs.  BPMC agrees that the United States, at a minimum, shall be entitled to recoup from BPMC any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, grant applications, appeals, or requests for payment.  Any payments due after the adjustments have been made shall be paid to the United States.

The United States reserves its rights to disagree with any calculations submitted by BPMC or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on BPMC or any of its subsidiaries or affiliates' cost reports, cost statements, information reports, grant applications, appeals, or other payment requests.

d.  Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine BPMC's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

17.   BPMC agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

18.   BPMC warrants that it has reviewed its financial situation and that it currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and (a) shall remain solvent following payment of the Settlement Amount due as of the Effective Date of the Agreement (either through payment or by transfer of the Withhold Amount to the State) and (b) expects to remain solvent following payment of the remainder of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to BPMC, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual

*United States et al. v. Brooklyn Plaza Medical Center*                                    *Page 15 of 24*
*Settlement Agreement*

promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which BPMC was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

19.    If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, BPMC commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of BPMC's debts, or seeking to adjudicate BPMC as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for BPMC or for all or any substantial part of BPMC's assets, BPMC agrees as follows:

  a. BPMC's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and BPMC shall not argue or otherwise take the position in any such case, proceeding, or action that:  (i) BPMC's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) BPMC was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payments made to the United States or the State; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to BPMC.

  b. If BPMC's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option,

may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against BPMC for the claims that would otherwise be covered by the release provided in Paragraph 3 above.  BPMC agrees that: (i) any such claims, actions, or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this paragraph, and BPMC shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) BPMC shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceedings that are brought by the United States within 60 calendar days of written notification to BPMC that the releases have been rescinded pursuant to this paragraph, except to the extent such defenses were available on September 29, 2010; and (iii) the Government has a valid claim against BPMC in the amount of $1,748,663.56, and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this paragraph, as well as in any other case, action, or proceeding.

c.  BPMC acknowledges that its agreements in this paragraph are provided in exchange for valuable consideration provided in this Agreement.

20.     Except as otherwise provided in this Agreement, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

21.     This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity.

22.     The United States agrees to execute a stipulation of dismissal in the form attached hereto as Exhibit 4. The dismissal shall be: (a) with prejudice with respect to Relator except with respect to her claims for retaliation and for attorneys' fees, unless those claims are otherwise settled, released, or dismissed in writing; (b) with prejudice with respect to the United States for the Covered Conduct, as defined in this Agreement, subject to Paragraphs 3, 5, 7, 10, 12, and 19, above; (c) with prejudice with respect to the State for the Covered Conduct, as defined in the State Settlement Agreement, subject to Paragraphs 3, 5, 7, 10, and 18 in the State Settlement Agreement; and (d) without prejudice as to the United States and the State with respect to allegations in Relator's complaint that are not contained in the Covered Conduct.

23.     Each Party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

24.     This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Eastern District of New York. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

25.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

26.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

27.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

28.     This Agreement is binding on BPMC's successors, transferees, heirs, and assigns.

29.     This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

30.     All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

31.     This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date of this Agreement").  Facsimiles or PDFs of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

32.     Any notices pursuant to this Agreement shall be in writing and shall, unless expressly provided otherwise herein, be given by hand delivery, express courier, or facsimile transmission followed by postage-prepaid mail, and shall be addressed as follows:

IF TO THE UNITED STATES:

United States Attorney for the
Eastern District of New York
<u>Attn</u>:  Financial Litigation Unit
271 Cadman Plaza East
Brooklyn, New York 11201

IF TO DEFENDANT:

Hermes Fernandez, Esq.
Bond, Schoeneck & King, PLLC
111 Washington Avenue
Albany, New York 12210-2211
Facsimile: (518) 533-3299

## THE UNITED STATES OF AMERICA

Dated: ~~July 22, 2014~~

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

By: _____

AMEET B. KABRAWALA
Assistant U.S. Attorney
Tel. (718) 254-6001

Dated: 7/15/14 _____

OFFICE OF INSPECTOR GENERAL
U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES

By: _____

ROBERT K. DECONTI
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General

## DEFENDANT BPMC

*By signing below, I confirm that I have read and understood the above.*

AGREED AND CONSENTED TO:

Donna M. Hayes.
Notary Public, State of New York
No. 24-4771051
Qualified in Kings County
Commission Expires 4/3/2015

_____

Lazetta Duncan-Moore, *as Chief Executive Officer of* BROOKLYN PLAZA MEDICAL CENTER

On the 23rd day of July in the year 2014, before me, the undersigned, personally appeared LAZETTA Duncan-Moore personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument.

_____

NOTARY PUBLIC

*Approved as to Form:*

Dated: July 24, 2014

BOND, SCHOENECK & KING, PLLC
*Attorneys for Defendant*
111 Washington Avenue
Albany, New York 12210

By: _____

HERMES FERNANDEZ, ESQ.
Tel. (518) 533-3209

## **RELATOR**

*By signing below, I confirm that I have read and understood the above.*

AGREED AND CONSENTED TO:

LUCIE GABRIEL

On the ___16___ day of ___July___ in the year __2014__, before me, the undersigned, personally appeared Lucie Gabriel, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument.

NOTARY PUBLIC

DEBRA L. RASKIN
Notary Public, State of New York
No. 02RA4951232
Qualified in Kings County
Commission Expires August 4, 2017

*Approved as to Form:*

Dated: ___July 16, 2014___

VLADECK, WALDMAN, ELIAS
& ENGLEHARD, P.C.
*Attorneys for Relator*
1501 Broadway, Suite 800
New York, New York 10036

By: _____
DEBRA L. RASKIN, ESQ.
Tel. (212) 403-7300

*United States et al. v. Brooklyn Plaza Medical Center*
*Settlement Agreement*

SO ORDERED.

s/Frederic Block

HONORABLE FREDERIC BLOCK
SENIOR UNITED STATES DISTRICT JUDGE

7/25/14.

<u>Exhibit 1</u>

Services Provided by Brooklyn Plaza Medical Center

Dental O/P
Prenatal O/P
Family Planning O/P
Primary Medical Care O/P
Medical Social Services O/P
Psychology O/P
Nursing
Well Child O/P
Pediatric O/P
Health Education O/P
Immunology
Venereal Disease Prevention
Multiphasic Screening O/P

General Primary Care
Diagnostic Laboratory
Diagnostic X-Ray
Screenings
     Cancer
     Communicable Diseases
     Cholesterol
     Blood Lead Test for Elevated Blood Lead Level
     Pediatric Vision, Hearing, and Dental
Emergency Medical Services
Voluntary Family Planning
Immunizations
Well Child Services
Gynecological Care
Obstetrical Care
Prenatal and Perinatal Services
Preventive Dental
Referral to Specialty Services
Substance Abuse Services
     Outpatient Treatment
     Harm/Risk Reduction (e.g., nicotine gum/patches, educational materials
Follow-Up/Discharge Planning
Eligibility Assistance
Outreach
Translation
Dental Services-Restorative
Dental Services-Emergency
Behavioral Health-Treatment/Counseling

Behavioral Health-Development Screening
TB Therapy
Nutrition (not WIC)
24 Hour Coverage
Hearing Screening

Allergy
HIV Primary Care Services
Oral Surgery
Genito-Urinary
Psychiatry

## **EXHIBIT 2**

| Installment Payment Amount | Installment Payment Due Date |
|---|---|
| $523.82 | On or before June 30, 2015 |
| $12,000.00 | On or before September 30, 2015 |
| $12,000.00 | On or before December 31, 2015 |
| $12,000.00 | On or before March 31, 2016 |
| $12,000.00 | On or before June 30, 2016 |
| $12,000.00 | On or before September 30, 2016 |
| $12,000.00 | On or before December 31, 2016 |
| $12,000.00 | On or before March 31, 2017 |
| $12,000.00 | On or before June 30, 2017 |
| $12,000.00 | On or before September 30, 2017 |
| $12,000.00 | On or before December 31, 2017 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA and STATE OF
NEW YORK, EX REL. LUCIE GABRIEL,

                    Plaintiffs,

       -against-

BROOKLYN PLAZA MEDICAL CENTER,

                    Defendant.

**CONSENT JUDGMENT**

No. 10-cv-4452 (FB)

---

WHEREAS, the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS") (collectively the "United States"), Relator Lucie Gabriel (the "Relator"), New York State, acting through the New York State Office of the Attorney General, Medicaid Fraud Control Unit ("MFCU") (the "State"), and Defendant Brooklyn Plaza Medical Center ("BPMC") (together, collectively referred to as the "Parties"), executed the attached Settlement Agreement resolving the United States's claims in the above-captioned action on terms requiring Defendant to pay to the United States, at most, $699,465.42, plus interest at a rate of 2.250% per year until such amount was paid in full.

WHEREAS, the Settlement Agreement provided that BPMC agreed to sign this Consent Judgment in the amount of $699,465.42, plus interest at a rate of 2.250% per year until the amount was fully and finally paid, to be held in escrow by the United States under the terms of the Settlement Agreement, and to be submitted to the Court for entry in the event Defendant failed to make payments as provided in the Settlement Agreement.

NOW THEREFORE, Defendants acknowledge the following:

1.      As of July 15, 2014, Defendant is indebted to the United States in the amount of $699,465.42, plus interest at a rate of 2.250% per year until such amount was paid in full.

2.      Defendant has no defense or counterclaim, and does hereby confess judgment to the United States as a result of their failure to pay a debt owed to the United States, less any payments they have paid as of the date the Court endorses this Consent Judgment.

3.      This confession of judgment is for a debt now justly and truly due and owing to the United States.

4.      Defendant agrees to the entry of this Consent Judgment by the Court.

***By signing below, I confirm that I have read and understood the above.***

AGREED AND CONSENTED TO:

_____

Lazetta Duncan-Moore, *as Chief Executive Officer of* BROOKLYN PLAZA MEDICAL CENTER

On the _____ day of _____ in the year _____, before me, the undersigned, personally appeared Lazetta Duncan-Moore, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument.

**** 

ACCORDINGLY, IT IS ORDERED that judgment is entered in favor of the State, and against Brooklyn Plaza Medical Center in the amount of $699,465.42, plus interest at a rate of 2.250% per year until such amount is paid in full.

_____

UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA and STATE OF
NEW YORK, EX REL. LUCIE GABRIEL,

                                        Plaintiffs,

                    -against-

BROOKLYN PLAZA MEDICAL CENTER,

                                        Defendant.

STIPULATION OF DISMISSAL

No. 10-cv-4452 (FB)

        WHEREAS, Lucy Gabriel ("Relator") filed the above-captioned action, in which
she asserted claims on behalf of the United States and the State of New York (the "State"),
pursuant the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729 *et seq.*, (the "Federal
FCA") and the New York False Claims Act, State Fin. Law § 187 *et seq.*, (the "NYFCA"),
respectively;

        WHEREAS, in accordance with 31 U.S.C. § 3730(b) and State Fin. Law §
190(2)(b), Relator's complaint was sealed for a period of at least sixty days from the date of the
filing of her complaint and the service of her disclosure material on the United States and State,
and that seal was subsequently extended by Orders;

        WHEREAS, Relator has not served her complaint on the Defendant, and thus the
Defendant has not filed an answer to the complaint;

        WHEREAS, Defendant Brooklyn Plaza Medical Center, Relator, and the United
States have entered into a settlement agreement resolving certain of the Federal FCA claims in
Relator's complaint (the "Federal Settlement Agreement");

WHEREAS, Defendant Brooklyn Plaza Medical Center, Relator and the State, have entered into a settlement agreement resolving certain of the NYFCA claims in Relator's complaint (the "State Settlement Agreement" together with the Federal Settlement Agreement, the "Settlement Agreements");

WHEREAS, the United States, the State, and Relator seek to dismiss Relator's complaint in accordance with the provisions of the Settlement Agreements;

THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by the undersigned counsel for the United States, the State of the New York and Relator that:

1. The Clerk of the Court shall unseal Relator's complaint, this Stipulation and Order, and the Settlement Agreements. The remaining documents on file, including the United States' applications for extensions of the seal and intervention deadlines, shall remain under seal. Any documents filed after the date of this Order shall *not* be filed under seal.

2. The United States and the State of New York shall be deemed to have intervened in this action for the purpose of settlement.

3. Relator's complaint is dismissed without prejudice as to the United States the State of New York and Relator. Once Defendant has completed full payment of the Settlement Amount as defined in the Settlement Agreements, the dismissal shall be deemed:

   a. with prejudice with respect to Relator except with respect to her claims for retaliation and for attorneys' fees;

b. with prejudice with respect to the United States for the Covered

Conduct, subject to Paragraphs 3, 5, 7, 10, 12 and 19 in the Federal

Settlement Agreement;

c. with prejudice with respect to the State for the Covered Conduct,

subject to Paragraphs 3, 5, 7, 10, and 18 in the State Settlement

Agreement; and

d. without prejudice as to the United States and the State of New York

with respect to allegations in Relator's complaint that are not

contained in the Covered Conduct.

4. The Clerk of the Court shall provide the United States Attorney's Office, for

the Eastern District of New York, 271 Cadman Plaza East, Brooklyn, NY

11201, Attention AUSA Ameet Kabrawala with a copy of this fully-executed

order.

Dated: July 24, 2014

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

By: _____

Ameet Kabrawala
Assistant U.S. Attorney
Tel. (718) 254-6001

Dated: July 24, 2014

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York

By:

Jacob M. Bergman
Special Assistant Attorney General
Medicaid Fraud Control Unit
120 Broadway – 12th Floor
New York, New York 10271
Tel. (212) 417-2040

Dated: July 23, 2014

VLADECK, WALDMAN, ELIAS
& ENGLEHARD, P.C.
*Attorneys for Relator*
1501 Broadway, Suite 800
New York, New York 10036

By:

DEBRA L. RASKIN, ESQ.
Tel. (212) 403-7300

SO ORDERED.

_____
HONORABLE FREDERIC BLOCK
SENIOR UNITED STATES DISTRICT JUDGE